May it please the Court, I'm Michael McCabe for the claimants Ricardo Perez-Lopez and Enedina Ferraza Soto. Also present with me at council table is Richard Barnett, who is the lead counsel for the claimants. This case is not really about the sufficiency of the claims to establish Article III standing at all. That was, of course, the asserted reason for the unauthorized mini-trial before the district court. But in reality, the government's pleadings established standing for the claimant Ricardo Perez. The declaration of DEA agent Scott Wells, which is Exhibit A to the initial complaint, asserts that the seized currency was owned by Ricardo Perez. It was seized from his person, from his vehicle, and he asserted his claim immediately, according to the declaration. But Section 18 says that's not enough. Excuse me? The United States v. Real Property located at Section 18 seems to say that's not enough, that standing has to be established by ponderance of evidence. Well, I think that the — Well, what do you do with that case? It's a case in the Ninth Circuit that seems to be binding. Why isn't that it? Well, I think that because there's far more than that. Not only was — did the government establish the standing, which was the same argument which was accepted in 38,570, the Fifth Circuit case, which has been cited by both parties, but also — You say the difference between a Ninth Circuit case and a Fifth Circuit case. Excuse me. The Ninth Circuit case is, of course, controlling on that particular issue. However, there was far more than just what the government alleged. And that is — But here you have a hearing or a trial before the judge. And I realize the judge could have come out a different way. But what the judge found was no standing. Okay? And, you know, you could challenge that finding, but it seems to me that we have controlling authority. The real property located in Section 18, that seems to say it has to be established by a preponderance of evidence. And the way you do that is by having a hearing. What the case actually says is not that you have to establish the truth of your claim by a preponderance of the evidence, but you have to make the colorable showing, which is required under all of the case law of this circuit, to establish Article III standing, and that that colorable showing perhaps has to be established by a preponderance of the evidence. It's an awkward way of saying it, because it says the claimant has the burden of establishing by a preponderance of the evidence that he has an interest in the property. The sufficiency of his claim. The sufficiency of his claim. Well, no, honey, you're adding word. What I just read was what the case actually says. Well, you cannot reconcile that particular overly broad statement with the wealth of authority which is cited throughout the appellant's briefs for the proposition that the burden upon a claimant is not an onerous one and he need only make a colorable showing. And this is simply an expression, albeit I contend an overly broad one, as to just what exactly is necessary to make that colorable showing. But in any event, there was far more than simply taking the asset from him. He also alleged his interest as a bailey for his wife. He asserted that his wife had an interest in the property by virtue of its having been the proceeds of the sale of the home. His wife, Enedina Parasa, not only made that claim, but submitted to a deposition of the government at which she again reiterated that position. She provided proof of that in the form of the deed which was delivered to the purchaser approximately 18 days after the transaction took place. Now, in the face of all that, there certainly was no ground upon which to challenge the assertion that, at least as to Enedina Parasa, that there was a legitimate Article III standing claim. And the government did not seek to avail itself of the remedy which is available to it, that is, to seek a pretrial hearing, an evidentiary hearing before the district court on that particular issue. The government did not move for judgment on the pleadings or to strike the claim. The government did not move for summary judgment as to which it was entitled to do, and the reason for that is conceded by the government in its brief, that there were indeed material issues of fact shown by the pleadings and by the positions of the parties as they were fleshed out in the depositions. What is the practical difference? I mean, you did have a trial, and does it really matter whether the district court finds lack of standing or simply finds that they, the appliance established a lack of an interest in the property? I mean, is it? Well, the difference is immense because under CAFRA, of course, the burden, the initial burden, once Article III standing is established, which it was done, which was done in this particular case, as I've asserted, the government has the burden of going forward to prove at the trial of the case the forfeitability of the rest. In this particular case, by virtue of putting the cart before the horse and requiring the claimants essentially to prove the validity and truth of their claim, their defense, they were tried to, they were required by the district court to prove their defense, to prove their claim before the government was required to go forward to prove the forfeitability of the rest. And we may, if in fact the proper procedure under CAFRA was followed, it may not have been required at all for the claimants to have done anything. If the government was unable to prove forfeitability of the rest under its three alternative theories which it put forth via preponderance of the evidence, the claimants didn't have to do a thing. And that is where the difference lies. The difference which inheres in putting the cart before the horse and making this showing part of the trial. Another way in which, excuse me. Excuse me, counsel, I'm sorry. My recollection is that your clients took the position that they got this money as some kind of a proceeds of a sale of a house. That's right. And at the hearing in this matter, the government produced, I believe, the affidavits of the people who allegedly gave them the money, who said they didn't provide them with a nickel. Well, that was part and parcel of the initial showing. There wasn't an affidavit. As a matter of fact, the purchasers, the Pimentels, their depositions were noticed. Is that what it was? But each of them asserted the Fifth Amendment privilege and refused to testify in a deposition. Well, didn't they? There was something in the record. Am I wrong here? Wasn't there something? There was a part of the initial declaration, the declaration appended to the initial complaint. That's what I thought I just said. The complaint filed by the government asserted that the Pimentels, the purported purchasers, had been interviewed and that they had denied that. But then when the effort was made to take the deposition of the Pimentels, each of them, upon the advice of their counsel, asserted the Fifth. So we're unable to do that. That's because the whole allegation here is that this is drug money. Yes. It's certainly a little odd that, or maybe more than a little odd, that they hand over $57,000 in cash and get the deed 18 days later. No contact has shown anything else. They just hand over a bushel of cash. And then after the money is seized, 18 days later, there's a transfer of the deed. Well, that goes to the merits of the claim. That goes to the jury question as to whether or not they can prove the claim if they're called upon to do so. That is, if the government first discharges its burden of demonstrating the forfeitability of the rest, then, of course, it is incumbent upon the claimants, if they are to prevail in the action, to convince the jury, the jury, the trier of fact in this particular case, as to the legitimacy and truth of that claim. And what the district court did in this particular case was screen that out. It did exactly what the Eighth Circuit said that you're not permitted to do in one Lincoln Navigator, that is, to rule upon the merits of the issue by resolving disputed factual issues in favor of the government. That is not the role of the district court. The district court is not the trier of fact. The jury is the trier of fact. And all the district court is empowered to do is to inquire into the sufficiency, that is, as to whether or not the claimants have established that they have a colorable interest by a preponderance of the evidence, and that has to be done pretrial. Thank you. We'll hear from the government. May it please the Court, counsel, Faith Divine, on behalf of the United States. Your Honors, the issue in this case, actually there are two issues in this case. The first is, what is the standard of proof to prove standing? And the second is, did the claimants prove standing at the lower court level? Now, I think the law is clear in the Ninth Circuit that in a civil forfeiture case, the threshold issue is standing. The claimant has the burden and must put forward evidence to show that he or she has an interest in the race before the government is required to put on their case proving that the property is subject to forfeiture. But, counsel, I think the district court disagreed and said the law was not clear. What case are you advocating as being the clear authority on the standing issue in a forfeiture case? I'm referring to the United States v. Real Property at Section 18. And that case says that the claimant has the burden of proof by a preponderance of the evidence to show that he has an interest in the property that is subject to forfeiture. I notice you have great confidence in that case because your brief is littered with citations to it. It's almost cited on almost every page. It's our position that that is the controlling authority in the Ninth Circuit. It's not a controlling authority. Why don't you bother to cite it if you really think it's a controlling authority? There's not a single citation to it. I believe it's cited. Unless your table of contents is. I believe that it's cited in the record below the district court opinion in all of the briefings. This issue was brief. There was, like, supplemental briefs and motions and limitations. Well, but you tell us this is your big case, and I'm wondering if it's such a big case for you, why doesn't it ever you never mention it in your brief? When did you discover it's such a big case? Well, I believe that the. It's customary to cite. I understand. In fact, there's a professional obligation to cite controlling authority. I understand. I would think that if it's helpful to your case, it would be more than a professional obligation. It would be a question of simple competence. I understand, Your Honor. I believe that. How did it manage to find its way not a single page on your brief? I believe it's because it was part of the record that, and it was been cited throughout that it's presumed. It's a new rule. Anything that's cited below, you don't need to bother citing on appeal. I like that. We get much shorter briefs that way. I understand. In that last case, we probably have saved about three-quarters of the briefs, maybe more. Okay. But you think that's the controlling case. So what you're taking away from it is the one line that I read to opposing counsel. Right? Yes. Do you have the case here? Do you have the case? I'm sorry. Do you have the case? Yes, I do. There's a single line in it that supports your position. There's, yes, that's correct. But there are also other cases that support that position. I mean, that, what we have here is. Okay. What are the other cases? I mean, you have to admit that that one case, although it says it clearly, doesn't elaborate. And what it says is a little bit counterintuitive because essentially what you are asking, and if we take that line in Section 18 literally, basically what this does is reverses the burden of proof. And creates a presumption that the government wins unless the property owner comes in and proves otherwise. And, of course, it's sometimes difficult for the property owner to prove otherwise because they might be incriminating themselves. And so it's a needle tap. That's the law. That's the law. But it's controlling. Well, it's, it really, when you take it in context and you look at what happened below, it's really the law that should be applied because, and I cite the Supreme Court case, Lugin, because that is the seminal case on standing and the issue is standing. And what that case says is that you have to take the standing issue at each stage of the proceedings. And in a civil proceeding, there are three stages. You have your initial stage where you challenge the pleadings and you can make a motion for judgment on the pleadings. And there are standards that the court, the district court, uses, evidentiary standards in making determinations. But we also have lots of cases that say that the showing you need to make for Article III standings are pretty minimal. Like all of our agency cases where people challenge regulations, you know, having to do with what happens to the spotted owl or, you know, some creature in the middle of the forest somewhere, not, not, not anywhere where anybody lives. All they have to say is something like, well, you know, once in a while I like to walk in the woods. And I've been known to sort of walk near these woods sometimes. That's all. And then they can have to challenge the regulations. They don't have to say a whole lot. They don't have a, there's no trial. The district court doesn't get a chance to, to make a fine. It says, well, I don't really think you walk in the woods, you know. There's nothing like that. This is a procedure that, that, I mean, this whole idea that you have to do a whole mini-trial with the, with the burden being on the, on the claimant to, to, to prove entitlement to the money, essentially, are, are fun. This is something reserved for forfeiture proceedings. I've never seen it in any other case. But it's not, I mean, I agree. In any other kind of case. It's certainly not in Lujan. I, I agree that it's, I agree that it is a less rigorous standard. But there is, the law is out there that the claimant has to show a facially colorable interest in the property. And. Well, how about the fact that one of the claimants was driving a car that nobody disputes. He's driving the car, and they find the, the, the money that's being claimed in the car that he's driving. And I believe there's proof that the car is owned by him or his wife. No, there, there was nothing in the record as to whether he owned the car. And what does that prove? I mean, he's driving in a car, and there's cash in the center console of the car. He's actually seen leaving a location with several people. My car's in the parking lot. And, you know, I think people wouldn't be free to sort of go in. You know, I have a lot in my car that wouldn't say, gee, that's a nice radio. Or, boy, I, you know, I really like, you know, I've got some tapes and CDs that I leave, that I listen to. I say, you know, that, that Harry Potter set of tapes is very nice. I'm sure Josh Krasinski, you know, probably not the owner of it. And I'll take the one cassette that's sitting in there to make the set that's sitting in the player. Now, come on. That's not, that's, you know, most, you know, when people have a vehicle, and particularly they're driving on a highway, sure, it's possible that somebody might have secreted something in the vehicle without their knowledge. But generally, we, as a matter of course, presume that things in people's vehicles belong to them. And the government relies on that all the time, and say, hey, you were carrying aliens, or you were carrying drugs, or there was a gun in the car, and you are stuck with it. And it uses that kind of presumption all the time in convicted people of crimes. I understand that. But there's no record, there's no evidence that this car belonged to him in the record. Well, how about the fact he was driving down the highway? But he could have been, that money could have been from a drug dealer or a narcotics trafficker. It could have belonged to somebody else. He was just driving in the car, and it was there. And the key and most important. That is the government's burden to prove in establishing a forfeiture. And what you really want to do is, I mean, that's a statutory burden. That's exactly the thing that the government has to prove. This is drug money. What you want to say is, you know, we're going to sort of shut our minds to any sort of common sense that we use in day-to-day life otherwise, and we're going to require them to come in and prove ownership of the money. And, of course, by doing that, they convict themselves criminally, possibly. I mean, it's an extremely difficult thing to do without taking serious risks with your liberty. It really makes things very much more convenient for the government. I mean, maybe you'll win. Maybe you'll win. But, boy, it's a neat trick. But the law is clear that they have that initial burden to show a facially colorable interest in the proceedings. What makes the law clear? I think that if you look at the briefs, I mean, I don't think there's any dispute between the briefs. Well, certainly not your brief. I don't think there's any. I don't think there's any. I'll have to look at some other brief. Well, the appellant's brief. I mean, and I don't think there's any. They carry their burden. They carry your burden, too. There's no dispute between the two sides that you have to show a facially colorable interest. Because I'm not sure that's true. I think your opposing counsel challenges the notion that the claimants have the obligation to first prove standing to the extent that you advocate. But what I wanted to ask you about was your reliance on Lujan in the context of a forfeiture case. What case authority are you relying upon to incorporate the precepts of Lujan in a forfeiture context? Well, I mean, that is the requirement in the forfeiture case is an Article III standing requirement. It's not a statutory requirement. It's under Article III. Right. So what I do is I look to the seminal case on Article III, which is the Supreme Court case. In Lujan, the parties have to establish standing. But actually, the claimants are not really the real parties in interest. They're not the parties. They may be the real parties in interest. But the government and the money are really the named parties. So how do you fit Lujan into that context when the government is really going against the money and the claimants are really kind of intervening? I don't think there's any distinction, because there the government has pursued the money, which is an in rem proceeding, and the claimants are the ones that are invoking the jurisdiction of the court to have their case heard and their interest litigated. So I would think it's the – I don't think there's any difference. Do you have a case that says that? I don't believe that this case that's been addressed in the forfeiture context. And really, the key here is the claimant that was driving the vehicle where we – where the government found the currency has not once stepped foot into the district court. He refused to attend any of the early neutral evaluation conferences, any settlement conferences. He refused to come here for his deposition. He might be afraid of being arrested? Possibly. And he refused to appear for trial. I don't think it's out of sloth or lack of interest. We don't really know where he is. I mean, there was never any clear indication that he, in fact, wanted to pursue this claim and was – What difference does that make? If he has hired an attorney to represent his interests, what difference does it make whether or not he actually shows up personally? Because the law – even the Ninth Circuit, if you look at the U.S. v. 191,900 case, it says that if you have possession of the currency, possession is not enough, that you must have possession plus an explanation. So – That has nothing to do with his failure to appear in court with his attorney. I don't understand that argument. Because he didn't appear to explain what the – what his interest was in the currency. Well, if he sent an attorney to explain, what difference does that make? But the explanation that was received through the attorney is – has been inconsistent. We don't have one solid explanation. We've had three conflicting explanations as to where this money came from and whether or not it was used to purchase or for the sale of this home at 692 Arga Place. So what was the court left with? They have nobody there to explain, and then they have these – I didn't catch those inconsistencies. I thought the story all along has been – I mean, I can't say it's a particularly plausible story. I mean, it sounds like – it sounds like something made up of the fact. But I thought the story was we got $57,000, whatever, in cash for our house. There was three explanations. One was, I received the $57,000 on July 27, 2000. That's what the claimant, Ricardo Lopez, said at the time that the cash was seized. He told the agent, I received it all today from Mr. Pimentel. Then the wife, Mrs. Soto, she testified in her deposition that she received the cash, some in a few days before and the rest on July 27. Then we had a pretrial order that was submitted. There was a different explanation where they had received $25,000 in mid-July and then another $27,000 at the – on July 27. So there really is no consistent explanation as to where the cash came from and when it was delivered. And then you have this deed that's transferred 18 days after the sale of the house. I don't think that the district court had any alternative but to rule that the claimants hadn't established a facially colorable interest to be able to proceed forward with the case. Okay. I think we're in a standing position. Thank you. Well, first of all, the claimants did cite Section 18 extensively and dealt with it in their opening brief. That's at pages 13 to 15 and 17, where we point out that it is essentially dicta because this did not involve a challenge to Article III standing pretrial or even at the outset of the trial. This was a bench trial. And essentially what the district court did was, as Judge Kaczynski indicated,  before the district court, which was conducted, and the conclusion of which the district court concluded that the claimant had failed to carry his burden of establishing his claim on the merits. We were never able to get to the merits because of this artificial contrived procedure, which has absolutely no support in any of the case law. And essentially what the district court did was, as Judge Kaczynski indicated, reverse the burden of proof, requiring the claimants to come forward and establish their claim before the government was put to its proof, which is the prerequisite under CAFRA. I think we're in a standing position. Thank you. Thank you. We'll take a five-minute recess before. Thank you.
judges: Canby, Kozinski, Rawlinson